IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


CLINSTON SINKFIELD,                     :

    Plaintiff,                          :

vs.                                     :   CIVIL ACTION 03-0432-WS-M

GRANTT CULLIVER, et al.,                :

    Defendants.                         :


REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 1983 by an Alabama
prison inmate, proceeding *pro se* and *in forma pauperis*, which
has been referred for report and recommendation pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  Plaintiff
claims that, while incarcerated at Holman Correctional
Facility, Plaintiff, along with other inmates, was forced to
shower nude in the presence of female correctional officers,
including Defendant Officers Gloria Burnham and Tammie Salter.
(Doc. 4 at 5, 6; Doc. 16).  Both Defendant Burnham and
Defendant Salter, on separate occasions, filed disciplinaries
against Plaintiff alleging that he was masturbating while nude
in the shower.  (Doc. 26, Exs. 1 and 2; Doc. 47, Ex. A).
Plaintiff claims that Defendant Burnham's and Defendant
Salter's observation of him in the shower is sexual harassment
and further constitutes an invasion of his privacy pursuant to

the Fourth Amendment and cruel and unusual punishment pursuant to the Eighth Amendment. (Doc. 4). Plaintiff alleges that Defendant Warden Grantt Culliver allowed the alleged sexual harassment by Defendants Burnham and Salter, and further conspired with them to punish Plaintiff in this manner. (Doc. 42 at 1). Plaintiff contends that being forced to shower nude in the presence of female officers was demeaning, and that the Defendant officers filed false disciplinary charges "maliciously and sadistically to cause harm." (Doc. 4 at 8). Plaintiff claims that he has suffered a psychological injury as a result of the actions of Defendants. (Doc. 4; Doc. 16 at 2).

As relief, Plaintiff seeks compensatory damages in the amount of $25,000 for severe emotional distress, punitive damages in the amount of $25,001, and to have the two referenced disciplinaries removed from his record. (Doc. 4 at 8).

Defendants Culliver, Burnham, and Salter filed an Answer (Doc. 25) and a Special Report (Doc. 26) on October 13, 2004, denying that they violated Plaintiff's constitutional rights and asserting the following defenses: that Plaintiff has failed to state a claim; qualified immunity; sovereign

immunity; that Plaintiff has failed to satisfy the physical
injury requirement needed to sustain a federal claim; that
Defendants' interests in maintaining safety in the prison
shower area outweighs Plaintiff's privacy rights; that review
of Plaintiff's disciplinary conviction for indecent exposure
is barred because there was evidence to support the hearing
officer's decision; that Plaintiff has no liberty interest in
being free from disciplinary segregation or convictions for
indecent exposure; and that Plaintiff's claims against
Defendant Culliver are barred because they are improperly
based on respondeat superior.  (Doc. 25 at 1-2).
Subsequently, on December 6, 2004, Plaintiff filed a response
to Defendants' Special Report, and on January 3, 2005, an
affidavit, both reiterating Plaintiff's original claims.
(Docs. 30 and 31).  On January 31, 2005, this Court entered an
Order converting Defendants' Special Report and Answer to a
Motion for Summary Judgment.  (Doc. 32).  Defendants' Motion
for Summary Judgment, along with Plaintiff's responses
thereto, was taken under submission on March 1, 2005.[1]   (Doc.

---

[1]Plaintiff filed an additional affidavit advising the
Court of his desire to continue this litigation on June 6,
2005, as well as a motion to amend the complaint so as to sue
all defendants in both official and individual capacities on
July 5, 2005.  (Docs. 37, 42).  Plaintiff also filed an

32).

After consideration by the Court, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants Grantt Culliver, Gloria Burnham, and Tammie Salter and against Plaintiff Clinston Sinkfield on all claims.

## I. FACTS

On June 11, 2003, while incarcerated at Holman Correctional Facility ("Holman"), Plaintiff claims that Defendant Correctional Officer Gloria Burnham was located in cubicle two overlooking the area where Plaintiff was showering.  Plaintiff contends that he, along with other inmates, was forced to shower in the nude in Defendant Burnham's presence, and according to Plaintiff, "her view was constant and intrusive." (Doc. 4 at 5).  As Plaintiff was almost finished showering, Defendant Burnham accused him of masturbation.  (*Id.*).  A disciplinary was filed regarding this allegation, and Plaintiff was found guilty of the charge.

---

additional response to Defendants' pending Motion for Summary Judgment on July 29, 2005.  (Doc. 45).  The Court has reviewed these additional documents and considered them in the decision to grant Defendants' Motion for Summary Judgment.

(Doc. 26, Exs. 2, 3, and 4).

Subsequently, Plaintiff claims that on March 3, 2004, Defendant Correctional Officer Tammie Salter "recklessly and deliberately" observed him showering in the nude and "sexually harassed" Plaintiff by accusing him of masturbation. (Doc. 16 at 1). Defendant Salter filed a disciplinary against Plaintiff charging him with this misconduct, along with indecent exposure, and Plaintiff was again found guilty of the charge. (*Id.*). Plaintiff contends that having the female Defendant officers observe him showering in the nude is an invasion of his privacy under the Fourth Amendment, and further that this invasion, along with Defendants "falsely" accusing him of masturbating while in the shower, amounts to cruel and unusual punishment forbidden by the Eighth Amendment. Moreover, Plaintiff asserts that Defendant Warden Grantt Culliver allowed the alleged sexual harassment by Defendants Burnham and Salter, and further conspired with them to punish Plaintiff in this manner. (Doc. 42 at 2).

According to Defendants, on June 11, 2003, Officer Burnham, who at that time worked on a rotating post assignment, was observing and monitoring Plaintiff, among other inmates. (Doc. 26, Ex. 2). On this date, Officer

5

Burnham observed Plaintiff standing between the opening of the brick wall which provides privacy to the inmates while showering.[2] (*Id.*, Ex. 4 at 4).  According to Officer Burnham, Plaintiff was staring at her while masturbating, and she wrote an incident report charging Plaintiff with rule violation # 38, Indecent Exposure/Exhibitionism.  (Doc. 26, Ex. 3).  A disciplinary hearing was subsequently held on June 19, 2003, and, although Plaintiff claimed that he was just "soaping up," and that Defendant Burnham "got the wrong impression," Plaintiff was found guilty by the hearing officer, who indicated in his report that he did not believe Plaintiff's testimony.[3]  (Doc. 26, Ex. 4 at 2).

Additionally, on March 3, 2004, Defendant Officer Salter observed Plaintiff standing in dormitory three, left side shower.  According to Defendant Salter, Plaintiff was again masturbating, while staring at Defendant Officer Salter, and

---

[2]Plaintiff has acknowledged that a "four foot brick wall with a small opening in front of the shower" exists to provide a certain amount of privacy while in the shower.  (Doc. 30 at 3; doc. 31 at 1).

[3]In her affidavit, Officer Burnham avers that she has reviewed Plaintiff's records and that Plaintiff has been written up for violating rule # 38, Indecent Exposure, 32 times from June 4, 1996, through April 19, 2002.  (Doc. 26, Ex. 2).

thus was ordered to leave the shower.  (Doc. 26, Ex. 1; Doc. 47, Ex. A).  However, Plaintiff refused to leave the shower, and had to be removed by Officer Anthony Stonewall, and escorted to Lt. Lloyd Hicks.  (*Id.*).  Defendant Salter charged Plaintiff with rule violation #38, Indecent Exposure/Exhibitionism, and a disciplinary hearing was held on March 14, 2004.  At the hearing, Plaintiff was found guilty by the hearing officer, Anthony Weaver.  (Doc. 47, Ex. A at 4). Defendant Salter avers that Plaintiff has numerous incident reports in his file charging him with violation of rule # 38, Indecent Exposure/Exhibitionism.  (Doc. 26, Ex. 1).

As a result of the alleged incidents, Plaintiff contends that he suffered emotional distress.  (Doc. 16 at 2). Plaintiff has requested compensatory and punitive damages, as well as to have the two subject disciplinaries removed from his record. (Doc. 4 at 7-8).

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is

7

proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting *Fed. R. Civ. P.* 56(c)).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*Fed. R. Civ. P.* 56(e); *see also Celotex Corp.*, 477 U.S. at 325-27.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary

8

judgment may be granted against a party who fails to establish
the existence of an element essential to that party's case and
on which that party will bear the burden of proof at trial."
*Liberty Mut. Fire Ins. Co. v. Sahawneh*, 2001 WL 530424, *1
(S.D. Ala. May 11, 2001) (citing *Anderson*, 477 U.S. at 249-
50).

## III. DISCUSSION

In this action, Plaintiff seeks redress for alleged
constitutional deprivations pursuant to 42 U.S.C. § 1983.
Section 1983 provides that:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes
> to be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress. . . .  For the
> purposes of this section, any Act of
> Congress applicable exclusively to the
> District of Columbia shall be considered to
> be a statute of the District of Columbia.

42 U.S.C. § 1983 (1994).

Plaintiff claims that Defendants' actions violated his
Fourth Amendment and Eighth Amendment constitutional rights.[4]

---

[4]Plaintiff states that he is suing Defendants in their
official and individual capacities.  (Doc. 42 at 1-2).  As
state officials, Defendants are absolutely immune from suit

9

Initially, the Court will address Plaintiff's claim that his Eighth Amendment right to be free from cruel and unusual punishment has been violated.  Plaintiff claims that Defendant Officers Burnham and Salter "recklessly and deliberately" observed him showering in the nude and "sexually harassed" Plaintiff by falsely accusing him of masturbation.  Plaintiff claims that these actions, along with the action of condoning this behavior by Defendant Warden Culliver, violated his Eighth Amendment right to be free from cruel and unusual punishment.  (Doc. 4 at 5-6; Doc. 42).

The Eighth Amendment protects incarcerated prisoners from punishment that is "cruel and unusual."  *Whitley v. Albers*,

---

for damages in their official capacities.  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). Additionally,"[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)(quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple*, 334 F.3d at 995 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Having determined herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

475 U.S. 312, 318, 106 S. Ct. 1078, 1083, 89 L. Ed. 2d 251 (1986); *see also Ingraham v. Wright*, 430 U.S. 651, 664, 97 S. Ct. 1401, 1408-09, 51 L. Ed. 2d 711 (1977).  Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain . . . , the infliction of pain totally without penological justification . . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense."  *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2398, 69 L. Ed. 2d 59 (1981)).

Further, "[t]he 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing *Rhodes*, 452 U.S. at 345-46, 101 S. Ct. at 2398-99). The Eighth Amendment, however, "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner.'" *Campbell v. Sikes*, 169 F.3d 1353, 1362 (11th Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986)).  Furthermore, "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349, 101 S. Ct. at 2400.  "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders

11

pay for their offenses against society.'" *Chandler*, 379 F.3d
at 1289 (quoting *Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399).
Prison conditions violate the Eighth Amendment only when they
"involve the wanton and unnecessary infliction of pain." *Id.*

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489
U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the United
States Supreme Court reiterated the State's constitutional
responsibilities with regard to inmates:

> [W]hen the State takes a person into its
> custody and holds him there against his
> will, the Constitution imposes upon it a
> corresponding duty to assume some
> responsibility for his safety and general
> well-being. . . . The rationale for this
> principle is simple enough: when the State
> by the affirmative exercise of its power so
> restrains an individual's liberty that it
> renders him unable to care for himself, and
> at the same time fails to provide for his
> basic human needs -- *e.g.*, food, clothing,
> shelter, medical care, and reasonable
> safety -- it transgresses the substantive
> limits on state action set by the Eighth
> Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 199-200, 109 S. Ct. at 1005-1006
(citations omitted).

In order to prevail on an Eighth Amendment inhumane
conditions of confinement claim, an inmate must make both an
objective and a subjective showing. First, the inmate must
prove that the conditions of confinement were, "objectively,

'sufficiently serious'" so as to amount to the denial of a basic human need.  *Chandler*, 379 F.3d at 1289 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992)).  A prisoner must prove the denial of "the minimal civilized measure of life's necessities."  *Chandler*, 379 F.3d at 1289 (quoting *Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399).  The challenged condition must be "extreme."  *Id.* Although an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S. Ct. at 2481.  Moreover,

> the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Id.* at 36, 113 S. Ct. at 2482.

Second, the inmate must prove that the prison official

was subjectively "deliberately indifferent" to a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 828-29, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838, 114 S. Ct. at 1979. In addition, prison officials are not liable even if they actually knew of a risk if they responded reasonably to the risk. *Farmer,* 511 U.S. at 844, 114 S. Ct. at 1982-83. Moreover, "[a] plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County, Ala.*, 268 F. 3d 1014, 1028 (11th Cir. 2001) (en banc) (alteration in original).

Having set forth the general legal principles applicable to Plaintiff's claim, the Court now turns to the facts. As the basis for his Eighth Amendment unconstitutional conditions

of confinement claim, Plaintiff merely contends that he has on occasion been monitored while nude in the shower by female Defendant Officers Burnham and Salter.  (Doc. 4 at 5). Plaintiff alleges that Defendant Burnham's and Defendant Salter's views were "constant and intrusive." (Doc. 4 at 5; Doc. 30 at 3).

Under the circumstances of this case, Plaintiff's allegations related to his treatment at Holman do not amount to the denial of a basic human need, *see DeShaney*, 489 U.S. at 199-200, nor do they evidence a deliberate indifference to a substantial risk of serious harm to Plaintiff's health or safety.  *See Farmer*, 511 U.S. at 837-38.  Plaintiff's only claim of damage is emotional distress, and it has been held that "[a] claim of psychological injury does not reflect the deprivation of the minimal civilized measures of life's necessities that is the touchstone of a conditions-of-confinement case." *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (quoting *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)), *cert. denied*, 525 U.S. 1139, 119 S. Ct. 1028, 143 L. Ed. 2d 38 (1999) (internal citations and quotation marks omitted).  *See also Billingsley v. Shelby County Dept. of Correction*, No. 02 29203, 2004 WL 2757915, *7 n.3 (W.D. Tenn. Nov. 24, 2004) (denying an Eighth Amendment conditions of

15

confinement claim because such cases require a showing of
*extreme* deprivation for which a claim of psychological injury
will not suffice).

Plaintiff has simply not alleged prison conditions which
"involve the wanton and unnecessary infliction of pain."[5]
Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399.  Considering the
evidence in the light most favorable to Plaintiff, the
question is whether a jury could reasonably conclude that
Defendants violated Plaintiff's rights under the Eighth
Amendment.  Under the circumstances of this case, the Court
finds that Plaintiff's allegations fail to establish an Eighth
Amendment constitutional violation.  *See Oliver v. Scott*, 276
F.3d 736, 743 n. 9 (5th Cir. 2002) (noting that it was "wise"
that the plaintiff did not raise the Eighth Amendment in his
action challenging the monitoring of male inmates in the

---

[5]However, even if the Court were to assume that Plaintiff
has alleged a constitutional violation based on his conditions
of confinement, Plaintiff would still be unable to recover his
requested relief for psychological harm as a result of 42
U.S.C. § 1997e(e), which states that "[n]o Federal civil
action may be brought by a prisoner confined in jail, prison,
or other correctional facility, for mental or emotional injury
suffered while in custody without a prior showing of physical
injury."  To make a successful claim for mental or emotional
injury, "a prisoner must allege more than a *de minimis*
physical injury in order to satisfy the requirement of section
1997e(e)."  *Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir.),
*modified in part by Harris v. Garner*, 216 F.3d 970 (11th Cir.
2000), *cert. denied*, 532 U.S. 1065 (2001).  As Plaintiff has
failed to allege any physical injury at all, he would be
unable to withstand the operation of 42 U.S.C. § 1997e(e).

16

shower by female guards, as the Fifth Circuit had previously refused to extend the Eighth Amendment to strip searches).

Plaintiff also alleges that Defendants Burnham and Salter violated his Fourth Amendment right to bodily privacy by monitoring him while he was showering in the nude, and that Defendant Culliver violated his right to privacy by condoning these acts.  Under the Fourth Amendment,

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Initially, this Court notes that the United States Supreme Court has indicated that prisoners retain a very minimal Fourth Amendment interest in privacy after they are incarcerated.  *See Hudson v. Palmer*, 468 U.S. 517, 527-28, 104 S. Ct. 3194, 3201, 82 L. Ed. 2d 393 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.").

In the present action, while the Eleventh Circuit has recognized that prisoners "retain a *limited* constitutional

right to bodily privacy," this right to privacy is evaluated on a "case-by-case basis." *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (emphasis added).  Moreover, this right to bodily privacy must be examined in light of whether the action by Defendants is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).  The Eleventh Circuit has acknowledged that "a prisoner's constitutional rights must be exercised with due regard for the 'inordinately difficult undertaking' of modern prison administration." *Fortner*, 983 F.2d at 1029 (quoting *Turner*, 482 U.S. at 85, 107 S. Ct. at 2259).

The Eleventh Circuit has held that when a prison regulation or policy "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Fortner*, 983 F.2d at 1030 (quoting *Turner*, 482 U.S. at 89, 107 S. Ct. at 2261).  The following four factors determine whether a regulation or policy is reasonable:

> (a) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (c) whether and the extent to which accommodation of the

18

> asserted right will have an impact on
> prison staff, inmates and the allocation of
> prison resources generally; and (d) whether
> the regulation represents an "exaggerated
> response" to prison concerns.

*Harris v. Thigpen*, 941 F.2d 1495, 1516 (11th Cir. 1991)

(quoting *Turner*, 482 U.S. at 89-91, 107 S. Ct. at 2261-63).

With regard to the fourth factor, the Eleventh Circuit has

emphasized that it "is not a 'least restrictive alternative'

test, but rather it allows an inmate to 'point to an

alternative that fully accommodates the prisoners' rights at

*de minimis* cost to valid penological interests' as evidence

that a restriction is not reasonable." *Fortner*, 983 F.2d at

1030 (quoting *Turner*, 482 U.S. at 90-91, 107 S. Ct. at 2262-

63).

Applying these factors to the present action, the Court

finds that allowing cross-sex surveillance in the manner in

which it has been conducted in this action is not a violation

of Plaintiff's Fourth Amendment bodily privacy rights.  First,

as was recently noted by the Fifth Circuit in a similar

action, allowing all correctional officers "to monitor all

inmates at all times increases the overall level of

surveillance." *Oliver v. Scott*, 276 F.3d 736, 746 (5th Cir.

2002).  That court recognized that "[b]athrooms and showers

could serve as harbors for inmate-on-inmate violence and

19

sexual assaults." *Id.* The policy of allowing cross-sex surveillance in the shower areas "ensures that the largest number of personnel remains available to monitor these areas and prevent these threats." *Id.* Defendants assert that without cross-sex surveillance, "prisons would not have the manpower to ensure safety in the shower areas." (Doc. 26 at 5). Second, as acknowledged by Plaintiff, the prison showers at Holman are surrounded by a four foot tall brick wall with a small opening to increase the privacy of the prisoners. (Doc. 30 at 3; Doc. 31 at 1). Third, Defendant Culliver would be forced to reassign much of his staff if he was only allowed to have male guards monitor male inmates while showering. Finally, Plaintiff "failed to identify an alternative that would create only *de minimis* costs in terms of inmate security or equal employment opportunities." *Oliver*, 276 F.3d at 746.

    Considering the evidence in the light most favorable to Plaintiff, the question is whether a jury could reasonably conclude that Defendants violated Plaintiff's bodily privacy rights under the Fourth Amendment. Under the circumstances of this action, the Court finds that Defendants have not violated Plaintiff's Fourth Amendment rights, as Defendants' actions were "reasonably related to legitimate penological interests."

Plaintiff additionally claims that his due process rights have been violated, presumably by having two false disciplinaries filed against him.  Plaintiff claims that both Defendants Burnham and Salter falsely accused him of masturbation (on separate occasions) while in the shower. (Docs. 4, 16).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that the rights to life, liberty, and property cannot be deprived without due process of law, which means that the individual being deprived of the right must be afforded constitutionally adequate procedures. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985).  In addition to procedural due process, the Due Process Clause guarantees substantive due process.  *DeKalb Stone, Inc. v. County of DeKalb, Ga.*, 106 F.3d 956, 959 (11th Cir. 1997) (citing *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990)).  "Substantive due process includes both the protections of most of the Bill of Rights, as incorporated through the Fourteenth Amendment, and also the more general protection against 'certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'"  *Id.*  "A decision can be shown to be unconstitutionally arbitrary and capricious 'only when it is

21

plain and palpable that it has no real or substantial relation to the public health, safety, morals, or to the general welfare.'" *Housing Investors, Inc. v. City of Clanton, Ala.*, 68 F. Supp. 2d 1287, 1301 (M.D. Ala. 1999) (quoting *Thomas Cusack Co. v. City of Chicago*, 242 U.S. 526, 530-31, 37 S. Ct. 190, 192, 61 L. Ed. 472 (1917)).

"Determining whether one was deprived of liberty presents a unique challenge with prisoners, who are already deprived of their liberty in the ordinary understanding of the word." *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999). The United States Supreme Court has identified two circumstances in which an inmate may be deprived of his liberty such that due process is required. The first circumstance is when a change in an inmate's conditions of confinement is so severe that it essentially "exceed[s] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995). The second circumstance is when the state has consistently bestowed a certain benefit to inmates (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

22

*Id*.  "In the first situation, the liberty interest exists
apart from the state; in the second situation, the liberty
interest is created by the state." *Bass v. Perrin*, 170 F.3d
1312, 1318 (11th Cir. 1999).

In this action, Plaintiff claims that he was deprived of
due process when he was found guilty on two different
occasions of
violations of rule # 38, Indecent Exposure/Exhibitionism.[6]  On
the first occasion, Plaintiff received a punishment of 45 days
in disciplinary segregation, 45 days loss of all privileges,
and was referred to classification for review.  (Doc. 26, Ex.
4).  Subsequently, on March 14, 2004, when Plaintiff was again
found guilty of violating rule # 38, Indecent
Exposure/Exhibitionism, he received a punishment of 45 days
disciplinary segregation to run consecutively with 45 days
loss of store, phone, and visitation privileges.  (Doc. 47,
Ex. A at 4).

Initially, a court generally looks at whether a plaintiff
has a protected liberty interest in the issued sanctions.  In
the present action, it does not appear that Plaintiff has a
protected liberty interest in his sanctions; however, even

_____

[6]Plaintiff only complains of two of the 32 citations for
indecent exposure which Plaintiff has received since 1996.
(Doc. 26, Ex. 2 at 2).

assuming without deciding that Plaintiff did have a protected liberty interest, this Court finds that Plaintiff did in fact receive due process during his disciplinary hearings on June 19, 2003, and on March 14, 2004, and therefore, Plaintiff's due process claim should be dismissed.

In *Wolff v. McDonnell*, 418 U.S. 539, 563, 94 S. Ct. 2963, 2978, 41 L. Ed. 2d 935 (1974), the Supreme Court held that an inmate facing disciplinary action must be given "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken" to meet minimum requirements of procedural due process.  The inmate should be given no less than 24 hours to prepare for his hearing.  *Wolff*, 418 U.S. at 564, 94 S. Ct. at 2979.  The Court also held that the inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566, 94 S. Ct. at 2979.

Defendants clearly complied with the procedural due process mandate set forth in *Wolff*.  Regarding Plaintiff's first disciplinary hearing, on June 14, 2003, Plaintiff was given written notice that a disciplinary hearing would be conducted on June 19, 2003, concerning his behavior on June

24

11, 2003. (Doc. 26, Ex. 4). In the notice, Plaintiff was informed that he was being charged with a violation of rule # 38, specifically Indecent Exposure/Exhibitionism from regulation # 403. (*Id.*). Plaintiff was further provided with the alleged specific circumstances of the violation. He was advised that he would be given an opportunity to be heard, as well as to present witnesses, which, in fact, he did. (*Id.*). At the hearing, the arresting officer, Defendant Burnham, testified, along with witnesses Officer Rickey Dailey and inmate Mark Johnson. The hearing officer, Anthony Weaver, made a written statement setting forth the evidence relied upon, including Plaintiff's comments, and the reasons for the specified punishment. The hearing officer recommended that Plaintiff be punished with 45 days disciplinary segregation, 45 days loss of all privileges, and referred to classification for review. (*Id.*). This recommendation was considered and approved by the Warden on June 26, 2003. (*Id.*).

Regarding Plaintiff's second disciplinary hearing, on March 4, 2004, Plaintiff was given written notice of the disciplinary hearing to be held on March 14, 2004. (Doc. 47, Ex. A). In the notice, Plaintiff was informed that he was being charged with a violation of rule # 38, specifically Indecent Exposure/Exhibitionism from regulation # 403. (*Id.*). Again, Plaintiff was provided the alleged specific

25

circumstances of the violation, and was again advised that he would be given an opportunity to testify and to present witnesses. (*Id.*).  Plaintiff stated on the disciplinary report that he did not wish to call any witnesses. (*Id.* at 3).  The disciplinary report indicates that although Plaintiff did not present witnesses, he did testify, along with Officer Salter.  The hearing officer, Anthony Weaver, made his determination after considering both Plaintiff's and Defendant Salter's testimony. (*Id.* at 4).  The hearing officer recommended that Plaintiff be punished with 45 days disciplinary segregation to run consecutively with 45 days loss of store, phone, and visitation. (*Id.*).  This recommendation was considered and approved by the Warden on March 19, 2004. (*Id.*).

In both instances, Plaintiff was given notice and allowed to call witnesses at his hearings if he so desired.  The fact that the hearing officers did not believe Plaintiff's testimony over that of the Defendant Officers does not indicate that Plaintiff was denied due process.  Regarding the evidence necessary to find a prisoner guilty of a disciplinary charge, the United States Supreme Court has held that "the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the

disciplinary board." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985) (emphasis added).  Clearly, in both instances in the present action, there was evidence in support of the hearing officers' decisions.  (Doc. 26, Ex. 4; doc. 47, Ex. A). Neither Plaintiff's allegations nor the evidence presented establishes that he was denied his right to procedural nor substantive due process under the Fourteenth Amendment with regard to his hearings and punishments; therefore, Defendants are entitled to summary judgment as to that claim.

Finally, Plaintiff asserts that Defendant Warden Culliver conspired with Defendant Officers Burnham and Salter to punish him by observing him in the shower and writing false disciplinaries alleging indecent exposure.  (Doc. 42 at 2). Plaintiff offers no additional facts or evidence other than that the Defendants conspired against him.  In order to state a conspiracy claim under § 1983, a plaintiff must show the parties reached an understanding to violate his federal rights.  *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.), *cert. denied*, 500 U.S. 932, 111 S. Ct. 2053, 114 L. Ed. 2d 459 (1991).  "The linchpin for conspiracy is agreement, which presupposes communication."  *Rowe v. Fort Lauderdale*, 279 F.3d

1271, 1284 (11th Cir. 2002) (quoting *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992)).  Plaintiff has failed to allege any facts to show there was an agreement.  Plaintiff's conclusory conspiracy claim is therefore due to be dismissed. *Accord Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984) (vague and conclusory conspiracy claims are subject to dismissal).

If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant. *Celotex Corp.*, 477 U.S. at 322.  "No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation." *Bennett*, 898 F.2d at 1534.  Therefore, since no constitutional violation has been established, Defendants' Motion for Summary Judgment is due to be granted.

<u>IV. CONCLUSION</u>

Based on the foregoing, the Court concludes that Defendants Grantt Culliver, Gloria Burnham, and Tammie Salter are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is

28

recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants Grantt Culliver, Gloria Burnham, and Tammie Salter and against Plaintiff Clinston Sinkfield on all claims.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  <u>Objection</u>.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to

a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 28th day of September, 2005.

<u>s/BERT W. MILLING, JR.</u>
UNITED STATES MAGISTRATE JUDGE

30